Darren Wayne HAWKINS *v.* STATE of Arkansas

CA CR 04-171                                         196 S.W.3d 517

Court of Appeals of Arkansas
Opinion delivered October 27, 2004

Washington County Public Defender's Office, by: *Michael J. Dodson,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Brent P. Gasper,* Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. A Washington County jury convicted appellant, Darrin Wayne Hawkins, of second-degree battery and sentenced him to seventy-two months' imprisonment in the Arkansas Department of Correction. He raises one point on appeal, arguing that the trial court erred by failing to warn him sufficiently of the dangers and disadvantages of waiving his right to counsel and proceeding at trial *pro se.* We agree and therefore reverse and remand.

Mr. Hawkins was charged in the First Division of the Fourth Judicial Circuit with battery in the second degree in violation of section 5-13-202 of the Arkansas Code Annotated. He was arraigned on those charges on September 29, 2003. On the day of arraignment, the public defender's office was appointed to represent him. Soon thereafter, attorney Michael Dodson was assigned Mr. Hawkins's case. Mr. Dodson represented Mr. Hawkins until mid-November, when Mr. Hawkins expressed his desire to represent himself. On November 26, 2003, the trial court addressed Mr. Hawkins's wish to proceed without counsel in a motion hearing. In that motion hearing, the trial court acknowledged Mr. Hawkins's intention to proceed *pro se* and allowed him to proceed, appointing Mr. Dodson as standby counsel to answer any question or advise Mr. Hawkins at his request. On December 1, 2003, Mr. Hawkins wrote a letter directly to the trial judge "releasing Mr. Dodson of his responsibility of representing [Hawkins]. On December 9, 2003, Mr. Dodson filed a motion to withdraw in compliance with Mr. Hawkins's wishes.

In *Hatfield v. State,* 346 Ark. 319, 57 S.W.3d 696 (2001), our supreme court addressed the issue of whether an appellant knowingly and intelligently waived his right to counsel by stating as follows:

[T]his court has long recognized the crucial aspect of informing an accused of his right to represent himself, along with the attendant

risks. Furthermore, our court has held that the trial court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights, and the burden is upon the State to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel. Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused.

A criminal defendant may invoke his right to defend himself *pro se* provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. The "constitutional minimum" for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forego the aid of counsel.

*Id.* at 325-26, 57 S.W.3d at 700-01 (citations omitted).

There is no question that Mr. Hawkins's request to proceed *pro* se was unequivocal and timely asserted. Nor does it appear that Mr. Hawkins engaged in conduct that prevented the fair and orderly exposition of the issues in the case. We must therefore determine whether Mr. Hawkins knowingly and intelligently waived his right to counsel. If we find that Mr. Hawkins's waiver was involuntary, we must also determine whether Mr. Dodson's assistance as standby counsel rendered the involuntary waiver moot.

The assistance of standby counsel may rise to a level sufficient for our court to moot an assertion of involuntary waiver of right to counsel based on our determination that the appellant had counsel for his defense. *See Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999). Whether the assistance rises to this level is a question that is answered by looking at the totality of the circum-

stances. *See id.* To moot an assertion of involuntary waiver, the assistance must be substantial, such that standby counsel was effectively conducting the defense. *See id.*

After applying the guidelines governing knowing and intelligent waiver to the facts and circumstances in *Hatfield, supra,* the *Hatfield* court determined that the trial judge failed to adequately advise Hatfield of the consequences of proceeding *pro se.* The court noted that the trial judge erred by failing to make even a limited inquiry into Hatfield's understanding of the legal process, although the judge allowed standby counsel to remain in the case. However, the court held that deficiencies in the judge's inquiry were rendered moot because standby counsel actively participated throughout the trial such that Hatfield waived his right to proceed *pro se. See Hatfield v. State, supra.*

Similarly, in *Bledsoe, supra,* our supreme court determined that there was no evidence of an inquiry by the trial court into Bledsoe's waiver of the right to counsel, and that Bledsoe's appointed standby counsel did not actively participate in his defense. Unlike *Hatfield,* however, Bledsoe was left to represent himself, and because Bledsoe's appointed counsel did not actively represent him, the court determined that Bledsoe was denied his right to counsel. *See Bledsoe v. State, supra.*

While Mr. Bledsoe was informed several times about the requirement that he follow the rules and procedures of court, he was given no explanation as to the consequences of failing to comply with those rules, such as the inability to secure the admission or exclusion of evidence, or the failure to preserve arguments for appeal. There was simply no discussion about the substantive risks of proceeding without counsel. Furthermore, the reference to the State's offer of a thirty-five-year sentence on a plea of guilty to the rape and burglary charges did not include a full disclosure about the range of penalties Mr. Bledsoe faced on any of the charges.

As in *Bledsoe,* in this case Mr. Hawkins was neither sufficiently advised of the consequences of proceeding *pro se,* nor did standby counsel actively participate in Mr. Hawkins's defense so as to render deficiencies in the judge's inquiry moot. As the following colloquy between Mr. Hawkins and the court at the November 26, 2003, hearing demonstrates, while the court made it clear that it discouraged Mr. Hawkins from proceeding *pro se,* the requisite inquiry and admonitions were lacking.

APPELLANT: I'd still like to go to — represent myself and to go to the law library.

THE COURT: Well, you have the right to represent yourself. I'd advise against it.

APPELLANT: Yes, sir.

THE COURT: It's not a good idea, but ... if you want to do that you have a right to do that.

APPELLANT: Yes, sir.

THE COURT: I'll appoint Mr. Dodson as standby counsel and ... if you want some legal advice he will give it to you. So that's fine, if that's your request.

The trial court further tried to discourage Mr. Dodson from proceeding *pro se* at the December 12, 2003, hearing but once again the requisite inquiry and admonitions were lacking.

THE COURT: [A]s I have said in previous hearings, you have a right to represent yourself and I don't think that's a good idea. I have tried to discourage it and in fact, I've appointed Mr. Dodson as your standby counsel and he's of course here present today. And if you choose to avail yourself of his services, and I recommend that you do so, he's as I say, standing by.

■ Merely discouraging appellant from proceeding *pro se* did not adequately inform him of the risks attendant to *pro se* representation. Additionally, under the facts of this case, this failure is not rendered moot by the trial court's appointment of Mr. Dodson as standby counsel.

We must determine whether the assistance of standby counsel was so substantial that the defendant is deemed to have had counsel for his defense, thereby mooting any assertion of involuntary waiver. *See Calamese v. State*, 276 Ark. 422, 635 S.W.2d 261 (1982). Whether or not such assistance rises to that level is a question that must be answered by looking at the totality of the circumstances. *See Wicoff v. State*, 321 Ark. 97, 900 S.W.2d 187 (1995). Before an assertion of involuntary waiver is considered, the totality of the circumstances must demonstrate that the assistance was such that standby counsel was effectively conducting the defense. *See Calamese, supra.*

In *Calamese, supra,* there was no evidence of any inquiry by the trial court into the defendant's attempted waiver of counsel, but our supreme court determined that the defendant had been effectively represented at trial by the attorney appointed to assist her. The attorney "immediately assumed a fully active role as trial attorney, conducting the entire interrogation, cross-examination, making objections to evidence and exhibits, presenting a defense with numerous exhibits and four defense witnesses, including eliciting lengthy testimony from the defendant and making a forceful closing argument, all of which was done with evident familiarity." *Id.* at 424, 635 S.W.2d at 262. Under those facts, the defendant was not left to represent herself at any stage of the proceedings, and she was not denied her right to counsel. *Id.*

Similarly, in *Oliver v. State,* 323 Ark. 743, 918 S.W.2d 690 (1996), no effective waiver was obtained when the defendant elected to proceed *pro se* and standby counsel was appointed to assist during trial. As in *Calamese,* our supreme court affirmed the conviction where, with the exception of the defendant's cross-examination of the first State witness, standby counsel cross-examined each State witness, made objections during the State's case, and presented a motion for directed verdict at the conclusion of the State's case. *Id.* Further, standby counsel recalled the State's first witness and examined him as well as the remaining six defense witnesses. *Id.* Counsel also made the closing argument. *Id.* Under such circumstances, the court held that the defendant was not denied his right to counsel because standby counsel not only advised the defendant but actively represented him during most of the proceeding, and the defendant effectively relinquished representation to his standby counsel early in the trial. *Id.*

█ No similar factual analogy is indicated by the abstract or record in this case. In fact, standby counsel, although present in the courtroom during the trial, did not participate in any part of appellant's trial on December 17, 2003. Accordingly, we must reverse and remand.

Reversed and remanded.

HART and BIRD, JJ., agree.