Joseph Stration PARKER *v.* STATE of Arkansas

CA CR 05–210                                        220 S.W.3d 238

Court of Appeals of Arkansas
Opinion delivered December 14, 2005

*James Law Firm, by: William O. James,* for appellant.

*Mike Beebe,* Ark. Att'y Gen., by: *Clayton K. Hodges,* Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. A Logan County jury convicted appellant Joseph Stration Parker of three counts of raping H.S., who was a ten-year-old girl at the time of the offenses. He was sentenced to sixty years in prison. On appeal, he argues that the trial court erred by denying his directed-verdict motions, by allowing him to represent himself at trial, and by denying his motion to dismiss for violation of the speedy-trial rule. We agree that Parker did not make a knowing and intelligent waiver of counsel and reverse and remand.

The following evidence was presented at Parker's trial. H.S. testified that on January 6, 2003, Parker, a guest in her home, told her he wanted to tell her a secret in her parents' bedroom. H.S.'s sister C.S. followed her to the bedroom, and Parker let her in. Parker then removed H.S.'s clothing and ordered her to lie down. He began to rape and choke H.S. while she was pleading with him to stop. He then ordered H.S. to take a bath, followed her into the bathroom, and made her perform oral sex on him. Parker told H.S. and her sister to give him their clothing and told the girls that if they told anyone what he had done, they would be put into foster care. H.S. then helped Parker come up with a cover story to tell her parents to explain the injuries she had.

Regarding the sex acts to which she was subjected, H.S. testified that Parker put his penis inside her vagina and inside her "bottom," and that he put his penis inside her mouth while she was in the bathroom. When her parents returned home from

work, and while Parker was still in the house, H.S. told her mother that she had been assaulted by a boy on her bus. The next day, however, H.S. told her mother what Parker had done. H.S. was taken to the hospital for a medical examination, and police officers photographed H.S.'s injuries. H.S. found the training bra she was wearing during the incident, and she turned it over to the police.

Dr. William Daniel, a physician at the Booneville Community Hospital, examined H.S. on January 7, 2003. He stated that it was his medical opinion that H.S. had been sexually abused the night before. He noted that she had a bruise on her chin, a small cut inside her mouth, and bruises on her neck. He stated that there was evidence of labial penetration and tears and blood in her rectum.

Joe Patterson, of the Logan County Sheriff's Office, testified that he first saw H.S. at the hospital, and that he took pictures of her and collected her bra, which was sent to the Arkansas State Crime Laboratory for testing. Jane Parson, a forensic biologist at the Arkansas Crime Laboratory, identified semen on H.S.'s bra and submitted it to the DNA section for testing. Melissa Myhand, another forensic biologist, performed a DNA test on the semen found on H.S.'s bra and testified that, with all scientific certainty, it was Parker's.

During his case, Parker presented the testimony of H.S.'s mother, who testified that Parker had come to her house to start a new life and get a job. According to H.S.'s mother, she did not perform oral sex on Parker, and she did not initiate any kind of sexual contact with Parker. H.S.'s older sister, E.R., testified about her relationship with Parker. She testified that she did have sex with Parker but not with her consent.

Parker testified in his own defense. He denied raping H.S., claimed that H.S.'s mother performed oral sex on him on the date in question and suggested that as the source of the DNA on H.S.'s training bra. Parker also testified that H.S. and her mother got into an altercation that night that ended with H.S. falling and hitting a toy chest. He admitted that he had previously been convicted of rape.

The jury found Parker guilty of three counts of rape and sentenced him to twenty years in prison for each count, to run consecutively.

We must first address Parker's first and third points, as reversal of either of these points would require that we dismiss this

case. For his first point on appeal, Parker argues that the evidence against him was insufficient to sustain his convictions. He also argues that, with respect to one of the three counts, it should be dismissed because there was no substantial evidence that he had penetrated the victim's anus. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). Evidence, direct or circumstantial, is sufficient if it is substantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Id.* This court will only consider evidence that supports the verdict. *Id.* "In cases of rape, the evidence is sufficient if the victim gave a full and detailed accounting of the defendant's actions." *Martin v. State*, 354 Ark. 289, 295, 119 S.W.3d 504, 508 (2003) (citing *Wilson v. State*, 320 Ark. 707, 898 S.W.2d 469 (1995)).

■ A person commits the offense of rape if he or she engages in sexual intercourse or deviate sexual activity with a person who is less than fourteen years old. Ark. Code Ann. § 5-14-103(a)(1)(C)(i) (Supp. 2003). Sexual intercourse is the "penetration, however slight, of the labia majora by a penis." Ark. Code Ann. § 5-14-101(10)(A) (Supp. 2003). "[A]ny act of sexual gratification involving . . . the penetration, however slight, of the anus or mouth of one person by the penis of another person" is deviate sexual activity. Ark. Code Ann. § 5-14-101(1)(A) (Supp. 2003). Here, the evidence against Parker is substantial. The victim testified that Parker put his penis inside her vagina, anus, and mouth, and she gave a full accounting of Parker's actions on the evening in question. This testimony alone is substantial evidence to support Parker's convictions. *See Martin, supra.*

Also, Dr. Daniel testified that H.S. had been sexually abused, and he noted a fresh bruise on her chin, a cut on the inside of her mouth, and bruises on her neck. He found evidence of labial penetration and noted that her rectum had tears and a small amount of bright red blood. A forensic biologist testified that she identified semen on H.S.'s bra and submitted it to the DNA section for testing. Another forensic biologist testified that she performed a DNA test on the semen and identified it as Parker's. H.S.'s testimony along with the other testimony is sufficient evidence to support Parker's convictions.

For his third point on appeal, Parker argues that the trial court erred when it denied his motion to dismiss for violation of the speedy-trial rule. An accused must be brought to trial within twelve months of the date he or she was arrested or the date the charges were filed, whichever is earlier, excluding any periods of necessary delay. Ark. R. Crim. P. 28.1(a) (2005); Ark. R. Crim. P. 28.2(a) (2005). If this rule is not followed, the defendant is entitled to a dismissal of the charges and a bar to prosecution. Ark. R. Crim. P. 28.1(e). "Once the defendant presents a *prima facie* case of a speedy-trial violation . . . the State has the burden of showing that the delay was the result of the defendant's conduct or was otherwise justified." *Romes v. State*, 356 Ark. 26, 36, 144 S.W.3d 750, 757 (2004).

■ Here, the felony information was filed on January 7, 2003, and Parker moved to dismiss on November 1, 2004, or 664 days after the speedy-trial time began running. A filing of a speedy-trial motion tolls the speedy-trial clock, and the speedy-trial date is assessed from the date the time began until the motion to dismiss was filed. *Doby v. Jefferson Co. Cir. Court*, 350 Ark. 505, 88 S.W.3d 824 (2002). The State therefore must account for 299 days in Parker's case.

When the defendant is scheduled for trial within the time for speedy trial, and the trial is postponed due to the need for the appointment of new counsel, this delay is excludable for good cause pursuant to Rule 28.3(h). *Romes, supra*. Here, the docket sheet indicates that on April 21, 2003, Parker's attorney was relieved, and new counsel was appointed. The case was passed and reset for trial on July 3, 2003. Thus, this seventy-three-day period from April 21, 2003, to July 3, 2003, is excludable for good cause.

The time period from December 9, 2003, to October 14, 2004, is also excludable. There are time periods that are excludable for different reasons and they overlap, but when considered together, they form a continuous excludable period of 309 days. After Parker's case was reset for July 3, 2003, it was rescheduled once on the motion of the State until December 12, 2003. On December 9, 2003, Parker filed a motion for further DNA analysis and for a continuance, requesting a delay in the trial so that he could obtain his own expert DNA analysis. On December 11, 2003, that motion was granted, and the case was continued until March 19, 2004, with the speedy-trial time tolled until the new trial date. The period from December 9, 2003, until March 19,

2004 is excludable as a "period of delay resulting from a continuance granted at the request of the defendant or his counsel." Ark. R. Crim. P. 28.3(c) (2005).

On March 17, 2004, Parker filed a motion to continue, arguing that there was insufficient time to prepare, and requested that, if the motion were granted the time occasioned by the delay be excluded from the speedy-trial calculation. The motion was granted on March 19, 2004, and the trial was continued until June 29, 2004. Thus, the period from March 17, 2004, until June 29, 2004, is excluded as a period attributable to a pretrial motion and as a continuance requested by the defendant or his attorney. *See* Ark. R. Crim. P. 28.3(a) and (c).

On May 5, 2004, Parker filed a series of pretrial motions, including a motion to sever a count of the felony information, a motion for a polygraph examination, a motion to admit certain evidence under the Rape Shield law, and a motion to compel discovery.[1] Over the next several months, the trial court conducted hearings on the outstanding motions. The last of these motions was disposed of on October 25, 2004. Thus, the period from May 5, 2004, to October 25, 2004, is excluded as a delay attributable to hearings on pretrial motions. *See* Ark. R. Crim. P. 28.3(a).

On June 9, 2004, Parker moved for a mental evaluation. The motion was granted, and a report was filed on August 30, 2004, stating that, at that time, Parker was incompetent to proceed with trial because of an inability to assist his attorneys. The trial court ordered further testing, and on October 14, 2004, a report was filed that found Parker competent to proceed to trial. Thus, the time period from June 9, 2004 to October 14, 2004, is also excludable as a "period of delay . . . resulting from . . . an examination . . . on the competency of the defendant." *See* Ark. R. Crim. P. 28.3(a).

The time period from December 9, 2003, to October 14, 2004, excluded 309 days and the time period from April 21, 2003, to July 3, 2003, excluded seventy-three days. A total of 382 days are excluded from the speedy-trial calculation and the minimum

---

[1] The delay in having the various motions heard was occasioned by Parker's request for a mental evaluation and a finding that he was incompetent to proceed.

the State had to account for was 299 days. Thus, Parker's speedy-trial right was not violated, and the trial court did not err when it denied his motion to dismiss.

For his second point on appeal, Parker argues that the trial court erred by allowing him to represent himself at trial and not sufficiently advising him of the consequences of proceeding to trial *pro se*. Parker therefore argues that he did not knowingly and intelligently waive his right to counsel. A defendant must knowingly and intelligently waive his right to counsel. *Hatfield v. State*, 346 Ark. 319, 57 S.W.3d 696 (2001). A defendant in a criminal case may invoke his right to defend himself *pro se* provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Pierce v. State*, 362 Ark. 491, 209 S.W.3d 364 (2005). Here, there is no question that Parker's request to proceed *pro se* was unequivocal and timely asserted, and it does not appear that he engaged in conduct that prevented the fair and orderly exposition of the issues in this case.

The standard of review is whether the circuit court's finding that the waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence. *Pierce v. State*, 362 Ark. 491, 209 S.W.3d 364 (2005). "The 'constitutional minimum' for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forego the aid of counsel." *Id.* The issue depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *Id*; *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999). "A specific warning of the danger and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver." 337 Ark. At 407, 989 S.W.2d at 512-13. A defendant must "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta v. California*, 422 U.S. 806, 835 (1975).

Parker relies on *Bledsoe* for his assertion that he did not knowingly and intelligently waive his right to counsel. In *Bledsoe*, our supreme court reversed a conviction for rape where the trial

court allowed the defendant to proceed *pro se* and failed to make him aware of the ramifications of proceeding *pro se*. *Id*. The trial court warned the defendant that he would be required to follow all of the rules and procedures of the court and this would most likely be difficult for him given his lack of formal legal education. *Id*. The trial court, however, never explained to the defendant the consequences of failing to comply with the rules, such as the inability to secure the admission or exclusion of evidence or the failure to preserve arguments for appeal. *Id*. There was no discussion about the substantive risks of proceeding without counsel. *Id*.

■ Here, there were multiple discussions concerning Parker's wish to proceed without counsel, and he signed a form stating that he was freely, knowingly, and intelligently waiving his right to counsel. The trial court explained to Parker that it would hold him to the same standards as an attorney and that it could not assist him or advise him in any way. The court also explained to Parker that it would likely be difficult for him to understand and abide by the rules because he had no formal legal training, and strongly advised him against representing himself. However, the trial court did not advise Parker at all about the substantive risks of proceeding without counsel or inquire about his educational background as required by *Bledsoe, supra*, or *Pierce, supra*. Although these cases are analyzed on a case-by-case basis, there must still be a specific warning of the substantive dangers of *pro se* representation in each case.

Moreover, even if this court concludes that Parker's waiver was involuntary, it must also determine whether the assistance of Parker's appointed stand-by counsel rendered the involuntary waiver moot. The assistance of standby counsel may rise to a level sufficient for this court to moot an assertion of involuntary waiver of right to counsel. *See Hawkins v. State*, 88 Ark. App. 196, 196 S.W.3d 517 (2004) (citing *Bledsoe, supra*). Whether the assistance rises to this level is a question to be determined by looking at the totality of the circumstances. *Id*. To moot an assertion of involuntary waiver, the assistance must be substantial, such that standby counsel was effectively conducting the defense. *Id*. Here, Parker fired his attorney because his attorney refused to file pretrial motions that Parker had drafted on his own. Parker stated that he had been in court a total of "about ten times." Parker requested that the attorney "be appointed as co-counsel" and for the trial court to let him represent himself. Parker moved on his own to dismiss his charges, making arguments that his right to a speedy

trial had been violated. He also made and renewed other motions, including a successful motion that the State be prohibited from introducing his prior convictions for any purposes other than impeachment, a renewal of a previously denied rape-shield motion, and a *motion in limine* to exclude certain testimony as hearsay.

Parker asked questions during *voir dire* of the panel. He also delivered an opening statement, in which he set forth his defense that the witnesses against him were fabricating their testimony and that their testimony was inconsistent with other evidence. He conducted his own cross-examination of witnesses and demonstrated he was familiar with certain types of evidentiary matters, such as using a recorded recollection to refresh a witness's memory. He also made objections to the admissibility of photographs taken of the victim, arguing that the photographs were not relevant and were unfairly prejudicial. Parker's counsel remained at counsel table throughout the trial, but conducted only the questioning of Parker when he testified in his own behalf.

The State contends that the record establishes that Parker had sufficient background and experience in legal matters and that he was aware of the dangers and disadvantages of self-representation. The State points out that he had obtained two GED's while previously incarcerated, had prior experience in "law enforcement," and had been an investigator for Alcohol Beverage Control. The trial court, however, did not inquire about this information. The State cites this information from a mental evaluation that was entered into evidence.

An assessment of how well or poorly a defendant mastered the intricacies of the law is not relevant to an assessment of his knowing exercise of the right to defend himself. *Hatfield v. State*, 346 Ark. 319, 57 S.W.3d 696 (2001). Here, the trial court did not make an inquiry as to Parker's understanding of the legal process, and it did not *specifically* warn Parker of the *substantive* risks of proceeding without counsel. We do not agree with the State that the record shows that Parker was sufficiently familiar with trial practice and procedure, because a defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to defend himself. *See Hatfield, supra* (citing *Faretta, supra*). The trial court here discouraged Parker from proceeding *pro se* and warned him that it would hold him to the same standard as an attorney regarding court rules, but this alone does not adequately inform him of the substantive risks of proceeding *pro se*.

*See Hawkins, supra.* Moreover, Parker's standby counsel did not substantially assist him such that the standby counsel was effectively conducting the defense. His standby counsel merely questioned Parker when he took the stand in his own defense and was available at the table for consultation. The record does not reflect that standby counsel actively participated enough to render deficiencies in the trial court's inquiry moot. In accordance with supreme court precedent in *Bledsoe, Pierce* and *Hatfield*, we have no choice but to reverse and remand this case for retrial.

Reversed and remanded.

CRABTREE, J., agrees.

BAKER, J., concurs.

KAREN R. BAKER, Judge, concurring. I agree that this case must be reversed; however, I write separately to address the difficulty faced by trial courts in determining if a defendant has validly waived his right to counsel.

Although determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the experience, and the conduct of the accused, several specific warnings of the dangers and disadvantages of self-representation are required. *Bledsoe v. State,* 337 Ark. 403, 989 S.W.2d 510 (1999). Additionally, a defendant should be made aware of the fundamentals of trial strategy and how to conduct cross-examinations of witnesses. *See Hatfield v. State,* 346 Ark. 319, 57 S.W.3d 696 (2001).

In this case, the trial judge repeatedly discouraged appellant from proceeding pro se, told him that if he represented himself he would be held to the same standards as an attorney and specified that the trial court would not be able to assist him in conducting the case. We hold that this was insufficient to apprise appellant of the dangers of self-representation, but do not explain what specific warnings are required.

A recent Missouri Supreme Court case, *State v. Zink,* 181 S.W.3d 66 (2005), provides more detailed information that would perhaps be beneficial to trial courts in Arkansas. *Zink,* affirmed the trial court's finding of a voluntary, knowing, and intelligent waiver of appellant's right to counsel were he had signed a waiver of counsel form, Vernon's Annotated Missouri Statute section 600.051, which codifies all the requirements for waiver of counsel. This form provides defendants with the following information:

(1) That the defendant has been charged with the offense of .......... (nature of charge must be inserted);

(2) That the defendant has a right to a trial on the charge and further that the defendant has a right to a trial by a jury;

(3) That the maximum possible sentence on the charge is .......... imprisonment in jail and a fine in the amount of .......... dollars or by both imprisonment and fine. That the minimum possible sentence is .......... imprisonment in jail or by a fine in the amount of .......... dollars or by both such confinement and fine;

(4) That the defendant is aware that any recommendations by a prosecuting attorney or other prosecuting official are not binding on the judge and that any such recommendations may or may not be accepted by judge;

(5) That if defendant pleads guilty or is found guilty of the charge, the judge is most likely to impose a sentence of confinement;

(6) That, if indigent, and unable to employ an attorney, the defendant has a right to request the judge to appoint counsel to assist the defendant in his defense against the charge.

Given our supreme court's holding in *Hatfield, supra*, in addition to the six items enumerated in the Missouri waiver of counsel form, the trial court should also advise the defendant:

(7) That the State will be required to present the witnesses against the defendant in open court were the defendant will have the opportunity to cross-examine them and ask any questions he wishes, unless objected to by the State and ruled improper by the court;

(8) That after the State's witnesses have testified, the defendant will have an opportunity to call witnesses on his own behalf, which will be subject to cross-examination by the State, and may elect to testify in his own behalf, but can not be required to do so.

(9) That the introduction of evidence in court is governed by rules with which the defendant may not be familiar, but with which he must nevertheless comply;

(10) That the defendant's lack of knowledge concerning the law may be damaging to his defense and to any future appeals of his case if convicted.

As noted in *Zink*, Missouri also requires that whenever a judge has permitted a waiver of counsel and a plea of guilty or a finding of guilty on the charge is entered and before the imposition of a sentence of confinement (including probation, parole or suspended sentence), the judge shall determine: (1) That if a plea of guilty has been entered, there is a factual basis for such a plea and, upon inquiry of defendant, that defendant is in fact guilty of the charge; (2) That the defendant does not know of the existence of any witness or of any fact, circumstances or evidence which was not presented to the court, which would exonerate defendant of the charge; (3) That upon inquiry of the prosecuting attorney there are no witnesses or evidence which would cast a reasonable doubt on the defendant's guilt or defenses available to defendant not disclosed to the court.

Furthermore, the trial court in *Zink*, offered appellant two opportunities to reconsider his decision prior to trial and appellant declined. Prior to the introduction of evidence, the trial court again informed appellant that he could change his mind on self-representation at any time during trial by notifying the court. Precautions such as these confirm a valid waiver and protect a defendant's constitutional right to counsel.