Stacy Lavelle BOGARD *v.* STATE of Arkansas

CR 92-960 844 S.W.2d 347

Supreme Court of Arkansas
Opinion delivered January 11, 1993

*William R. Simpson, Jr.*, Public Defender, by: *C. Joseph Cordi, Jr.*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Stacy Lavelle Bogard, age sixteen at the time, was charged with capital murder for the death by shooting of Jessie Faulkner. He was convicted of first-degree murder and sentenced to life imprisonment. On appeal, he urges that the circuit court erred in failing to suppress oral custodial statements made by him because he was unaware that unrecorded statements could be used against him as evidence. This issue has no merit, and we affirm.

On June 6, 1991, Jessie Faulkner called the North Little Rock police and reported that Bogard was harassing people in the neighborhood. Bogard was arrested but released that same night at about 8:00 p.m., and he returned to Faulkner's area. He accosted Faulkner, and, according to one witness, said that Faulkner had "snitched" on him and then shot at him with a pistol three or four times. One shot hit Faulkner in the head and a second shot struck him in the upper left back. Faulkner was found by the North Little Rock Police dead on the ground with a pocketknife in his hand.

At 4:00 a.m. the following morning, the police arrested Bogard. He was taken to the police station, accompanied by his mother, where he was read his *Miranda* rights. Both Bogard and his mother initialed each right. In addition, North Little Rock Police Detective William Kovach asked Bogard if he understood his rights, and he said that he did. Bogard and his mother then signed the waiver of rights form. Following that, he agreed to talk to police officers but would not permit the interview to be recorded. Instead, Detective Kovach and a second North Little Rock detective, Donnie Smith, took notes. He told the detectives that he shot Faulkner but did so in self-defense. A month later, Bogard told Dr. Michael J. Simon, supervising forensic psychologist at the State Hospital where he was committed for evaluation, that the state would have a difficult time proving its case because "I didn't give them no statement."

Prior to trial, Bogard moved to suppress his oral statements, contending that he did not fully understand what rights he had waived prefatory to making the statements. A hearing was held, and after the hearing the circuit court denied the motion. The trial followed, and Bogard's oral statements were introduced into evidence. The jury found him guilty of first-degree murder, and he was sentenced to life imprisonment.

The crux of Bogard's argument is that he believed that unrecorded comments to police officers could not be used against him. This, he contends, is evidence that he did not fully understand the *Miranda* warnings that what he said would be used against him. Thus, he argues that his waiver was not effective and that his oral statement should have been suppressed. The state contests this and contends that the record is clear that Bogard was

fully apprised of his rights and understood them. He chose, however, to submit to a police interview.

 Statements made to law enforcement officers during custodial interrogations are admissible only after the state establishes that a defendant voluntarily, knowingly, and intelligently waived his right to counsel. *Miranda* v. *Arizona*, 384 U.S. 436 (1966). At issue in the case before us is not whether Bogard's statements or waiver were involuntarily made, that is, coerced in some form or fashion, but rather whether the waiver was given without full comprehension of the nature of the right abandoned and the consequences of that abandonment. *See Moran* v. *Burbine*, 475 U.S. 412 (1986). Whether the defendant knowingly and intelligently waived his rights must be determined by the totality of the circumstances. *Mauppin* v. *State*, 309 Ark. 235, 831 S.W.2d 104 (1992); *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985). Our standard of review is whether the circuit court's finding that the waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence. *Mauppin* v. *State, supra; Ryan* v. *State*, 303 Ark. 595, 798 S.W.2d 679 (1990).

We are not convinced that Bogard's stated confusion invalidates a knowing and intelligent waiver of his right to remain silent. Both Bogard and the state rely on the case of *Connecticut* v. *Barrett*, 479 U.S. 523 (1987) for their respective positions, and the facts in *Barrett* do approximate the facts in this appeal. In *Barrett*, the defendant was arrested for sexual assault and advised of his *Miranda* rights. He told police officers that he understood his rights and would not give a written statement without counsel being present. He did not object, however, to talking to officers about the incident. In his comments which followed, he admitted complicity in the crime. The trial court allowed the officers to testify about his statements, but the Connecticut Supreme Court reversed on the basis that Barrett had requested counsel and that served as an invocation of that right for all purposes.

The United States Supreme Court reversed the Connecticut Supreme Court and held that Barrett made clear to police that he was willing to talk about the crime in the face of the *Miranda* warnings. The Court stated: "*Miranda* gives the defendant a

right to choose between speech and silence, and Barrett chose to speak." 523 U.S. at 529. The Court then addressed whether the distinction that Barrett drew between oral and written statements exhibited a lack of understanding about his rights. The Court concluded that it did not:

> We also reject the contention that the distinction drawn by Barrett between oral and written statements indicates an understanding of the consequences so incomplete that we should deem his limited invocation of the right to counsel effective for all purposes. This suggestion ignores Barrett's testimony — and the finding of the trial court not questioned by the Connecticut Supreme Court — that respondent fully understood the *Miranda* warnings. These warnings, of course, made clear to Barrett that "[i]f you talk to any police officers, anything you say can and will be used against you in court." (Citing to record.) The fact that some might find Barrett's decision illogical is irrelevant, for we have never "embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." (Citing authority.)

479 U.S. at 530.

■ In this case, Bogard was fully apprised of his rights as evidenced by his initials and his mother's initials on the rights form and his signed waiver form. Police officers also testified that they believed that he understood his rights. Bogard was sixteen years old at the time and had a ninth-grade education. Moreover, he was not a newcomer to the criminal justice system, having been arrested previously and convicted of two burglaries. At some point, he did draw in his own mind a distinction between recorded and unrecorded statements and their effectiveness. This may have been illogical but, as *Connecticut v. Barrett, supra,* illustrates, the point is irrelevant to the issue of whether Bogard chose to speak freely or not. He clearly did, and his statement was appropriately entered into evidence.

Because life imprisonment is the sentence, Rule 11(f) of our Supreme Court Rules comes into play. That rule provides that the appellant must abstract *all* objections decided adversely to him, together with parts of the record necessary for understanding, and that the Attorney General shall assure that this occurs and

brief all points that involve error. We note that both parties failed to comply sufficiently with Rule 11(f) with regard to motions and objections made by the appellant. The record in this case, however, has been examined in accordance with Rule 11(f), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.