Hezekiah PIERCE  *v.*  STATE of Arkansas

CR 04-1013                                209 S.W.3d 364

Supreme Court of Arkansas
Opinion delivered June 2, 2005

William R. Simpson, Jr., Public Defender, by: Erin Vinett, Deputy Public Defender, for appellant.

Mike Beebe, Att'y Gen., by: Vada Berger, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. Appellant, Hezekiah Pierce, appeals the order of the Pulaski County Circuit Court convicting him of felony theft of property and breaking and entering. He was sentenced as an habitual offender to fifteen years' imprisonment on the theft charge and five years' imprisonment on the breaking-and-entering charge to run consecutively. On appeal, appellant argues that the trial court erred in forcing him to be represented by counsel and in refusing to allow him to appear *pro se*. The State concedes error. We reverse and remand for a new trial.

Denise Dodd DelGiorno, the victim in this case, testified that on August 2, 2001, she parked her red Thunderbird in the Baptist Health emergency room parking lot in North Little Rock. When she returned to her car after work, she saw that the right rear window was broken, and there was tape around the window. Her purse, which contained her credit cards, personal checks, driver's license, and ten dollars in cash, was missing from the vehicle. On December 11, 2001, the State filed a felony information charging appellant with theft of property and breaking and entering.

On February 26, 2004, appellant stood trial in Pulaski County Circuit Court, Sixth Division. A pretrial motion hearing

was held in chambers during which appellant asked to appear *pro se*. The trial court made an inquiry of appellant's education and prior experience with the legal system. After a series of questions, the trial court declined to allow appellant to represent himself. Additionally, appellant initially wore his orange jumpsuit for the trial, but he later changed into street clothes before appearing before the jury.

At trial, the State presented four witnesses. DelGiorno was called as the first witness. She testified that she was employed at the Baptist Health emergency room as an ER nurse. When she returned to her car that evening, she discovered that the right rear passenger's window was broken, and there was tape around the window. Her purse, which she left in the vehicle, was missing.

Scott Lawson, the State's second witness, testified that he worked on August 2, 2001, and treated appellant that day. At approximately 3:30 in the afternoon, he went to look for appellant outside the emergency room for follow-up treatment, and found appellant "out by a car" with the trunk open. Lawson later told police that he saw appellant by the car.

The State's third witness was Eugene Jones, a van driver for the hospital. Jones testified that he came in contact with appellant at approximately 3:30 in the afternoon. Appellant asked Jones if he knew a locksmith. Jones then noticed a red Thunderbird parked nearby, and its back driver's side window was broken. Jones further testified that he asked appellant if he had contacted security, and appellant responded that he had.

Detective John Desizlets, a detective with the North Little Rock Police Department, was the State's fourth witness. Desizlets testified that appellant waived his rights after being Mirandized, and gave a taped statement during which appellant confessed to breaking into the victim's car and to stealing her purse.

After the State rested, the defense presented appellant's testimony. Appellant testified that on the date in question, he was at a cosmetology school where he fell into the wrong crowd. He testified that he smoked a blunt of marijuana, sherm, PCP, and cocaine, became ill, and went to the hospital where doctors performed tests and gave him Demerol. He testified, "I did what I did; but, you know, like I told him, I wasn't aware of it, and I didn't have no knowledge of when it happened or what I did."

The jury returned a guilty verdict on both offenses and sentenced appellant to fifteen years' imprisonment on the theft

charge and five years' imprisonment on the breaking-and-entering charge. On April 7, 2004, the trial court entered a judgment and commitment order. From that order, appellant brings this appeal.

For his sole argument on appeal, appellant argues that the trial court erred in declining his request to proceed *pro se*. Specifically, appellant contends that the trial court's reliance on his educational level and prior legal knowledge were invalid bases for the trial court's refusal to allow him to appear *pro se*. In response, the State concedes error, stating that the trial court refused to allow appellant to represent himself without the proper inquiry under *Faretta v. California*, 422 U.S. 806 (1975).

■ Our standard of review is whether the circuit court's finding that the waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence. *Bogard v. State*, 311 Ark. 412, 414, 844 S.W.2d 347, 349 (1993).

■ The Sixth Amendment to the United States Constitution, made obligatory upon the states by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Philyaw v. State*, 288 Ark. 237, 244, 704 S.W.2d 608, 611 (1986) (citing *Gideon v. Wainwright*, 372 U.S. 335(1963)). Article 2, section 10, of the Arkansas Constitution specifically provides that an accused in a criminal prosecution has the right to be heard by himself and his counsel. *Philyaw*, 288 Ark. at 244, 704 S.W.2d at 611 (citing *Barnes v. State*, 258 Ark. 565, 528 S.W.2d 370 (1975)). Significantly, no sentence involving loss of liberty can be imposed where there has been a denial of counsel. *Philyaw*, 288 Ark. at 244, 704 S.W.2d at 611 (citing *White v. State*, 277 Ark. 429, 642 S.W.2d 304 (1982)).

■ The constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial. *Philyaw*, 288 Ark. at 244, 704 S.W.2d at 611 (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)). An accused is entitled to represent himself provided that he knowingly and intelligently forgoes his right to counsel, and is able and willing to abide by the rules of procedure and courtroom protocol. *Gilbert v. State*, 282 Ark. 504, 505-06, 669 S.W.2d 454, 456 (1984) (citing *Faretta, supra*). However, the right of self-representation carries with it the responsibility for one's own mistakes. *Gilbert*, 282 Ark. at 506, 669 S.W.2d at 456. A defendant who elects to represent himself cannot later complain that the quality of his own defense amounted to a denial of effective

assistance of counsel. *Id.* (citing *McKaskle v. Wiggins,* 465 U.S. 168 (1984); *Faretta,* 422 U.S. at 834 fn46).

In *Faretta,* the United States Supreme Court addressed the federal constitutional right of a criminal defendant to proceed *pro se.* The Court stated that "in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits [traditionally associated with the right of counsel]." *Id.* at 835. The Court further stated that, although a defendant need not have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he "should be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (citing *Adams v. United States ex rel. McCann,* 317 U.S. 269 (1942)). In *Faretta,* the Court also concluded that a defendant's technical legal knowledge, as such, is not relevant to an assessment of his knowing exercise of the right to defend himself.

In Arkansas, we have long recognized the crucial aspect of informing an accused of his right to represent himself, along with the attendant risks. *Hatfield v. State,* 346 Ark. 319, 57 S.W.3d 696 (2001). We have said that a defendant in a criminal case may invoke his right to defend himself *pro se* provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Mayo v. State,* 336 Ark. 275, 280, 984 S.W.2d 801, 804 (1999).

We have held that the trial court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *Gibson v. State,* 298 Ark. 43, 764 S.W.2d 617 (1989). Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *Bledsoe v. State,* 337 Ark. 403, 989 S.W.2d 510 (1999). Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Id.* A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. *Id.*

The burden is upon the State to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel. *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996).

With these well-established principles in mind, we turn to the present case. Before appellant's trial, appellant informed the trial court that he was unhappy with the representation of his court-appointed counsel, Mr. Lance Sullenberger. The trial court conducted the following inquiry:

> THE COURT: That brings us to the case that's set for jury trial today, which is CR-2001-4199. Now the very first thing, Mr. Pierce, if you've visited with counsel and gotten his advice, I will allow you to make some comments to me.
>
> The very first thing I'd like to go over with you is, you're in your orange jumpsuit. Mr. Sullenberger, were street or civilian clothes made available to Mr. Pierce?
>
> MR. SULLENBERGER: They were. I took them down there this morning, Your Honor.
>
> THE COURT: Mr. Pierce, do you not want to wear them?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Let me just tell you something: It is my recommendation to you that you wear them. That's standard operating procedure. But are you aware that the clothes are available for you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. But you just simply choose [sic] not to wear them?
>
> THE COURT [sic]: Yes, sir.
>
> THE COURT: Well, I'm going to allow you to wear what you have on, which is the orange with, it looks like some long-sleeve undershirt if that's what you want to do. I'm sure Mr. Sullenberger has advised you that you should wear the street clothes. Is that correct, Mr. Sullenberger?

MR. SULLENBERGER: That's correct, Your Honor.

THE COURT: But if that's your decision, then, Mr. Pierce, that's your right.

MR. SULLENBERGER: May I make a statement, Your Honor?

THE COURT: Yes, you may.

MR. SULLENBERGER: For the record, Your Honor, I went to visit with Mr. Pierce at the Pulaski County Regional Detention Center on February the 13th and February the 23rd. Both times, Mr. Pierce refused to cooperate with me or talk to me at all — well, he did talk to me, but he refused to cooperate with me.

He had indicated that he may have private counsel for this trial today, or that he may even represent himself today. So he did want me — he indicated to me he did not want me to represent him today.

THE COURT: Well, you're still legally required to represent him today, Mr. Sullenberger, and you are ready, to the best of your ability, to go then?

MR. SULLENBERGER: Yes, Your Honor.

THE COURT: Okay. Now, Mr. Pierce, did you have something that you wanted to go over?

THE DEFENDANT: Yes, sir. I don't — with all due respect, Mr. Sullenberger, he's been saying he's ready for trial ever since we've been here. Mr. Sullenberger don't know nothing about my case at all.

And when the judge asked him, is he prepared to go to trial, he done stand up there and say, "Yes," and which he's not ready to go to trial.

And every time I get out on bond, I called Mr. Sullenberger, and I was telling him I made a bond, and Judge Proctor had me go to a rehab. So in the rehab,

you don't get a chance to do nothing, to hire an attorney or nothing. So when I left the rehab and I came to court, he was allowing me to stay out.

But this is between the time, like a month before I'm going to a jury trial. And then things come up, and I'm talking to Mr. Sullenberger, trying to get it postponed. The last time I talked to him, Mr. Sullenberger, he tells me, "You are going to go to trial regardless if I'm ready or not."

And he was saying that, "They're going to lock you up in jail when you come to court." This is the man's statement. He's supposed to be my lawyer, but he ain't representing me at all, sir.

THE COURT: Well, I mean, he was probably making that statement because Judge Proctor probably — his policy, and the policy of this court is, on jury trial day, if you're set for trial, you are going to go to trial, unless there's another case in front of you, and there's not today. Yours is the only case today, Mr. Pierce.

THE DEFENDANT: Okay. I understand that part.

THE COURT: Okay. So, I mean, we are going to go to trial today.

THE DEFENDANT: Okay. I was just saying, I just don't want Mr. Sullenberger to say nothing on my behalf.

THE COURT: Well, he represents you today. Now are you telling me that you want to represent yourself.

THE DEFENDANT: Yeah. I don't want him to say nothing, sir. Nothing.

THE COURT: If we're going to do that, then I need to swear you under oath and I need to ask you some questions, because then I have to make a decision as to whether I'm supposed to let you proceed on your own, Mr. Pierce. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. So if you'd just raise your right hand.

(Defendant sworn)

THE COURT: You've indicated that you wish to proceed without a lawyer.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Before proceeding any further, I need to make sure that you fully understand the possible consequences of what you are requesting. Do you believe that you are competent to represent yourself?

THE DEFENDANT: Yes, sir.

THE COURT: What kind of education have you received, Mr. Pierce?

THE DEFENDANT: I got my GED.

THE COURT: You got your GED.

THE DEFENDANT: Yes, sir.

THE COURT: Have you had any previous experience in the criminal justice system?

THE DEFENDANT: No, sir.

THE COURT: You've been convicted several times I believe?

THE DEFENDANT: Yes, sir.

THE COURT: Have you always been represented by an attorney?

THE DEFENDANT: Yes, sir.

THE COURT: So with respect to those previous trials, what was the nature of your participation? Did you

participate in any manner in these, or did the attorney handle all of them for you, Mr. Pierce? Those other trials?

THE DEFENDANT: Well, the attorney, he basically handled it.

THE COURT: Okay. Now have you read anything relating to the law or relating to the rules of criminal procedure about how a trial is going to be conducted?

THE DEFENDANT: No, sir.

THE COURT: Can you tell me why, for instance, today, you've made a decision that you'd rather wear the orange jumpsuit than the street clothes?

THE DEFENDANT: Because, I mean, this is what I wear every day in here, in the Pulaski County jail.

THE COURT: In the Pulaski County jail.

THE DEFENDANT: So, I mean, I just — I don't want to change nothing. This is the way they see me. This is the way they dress me out every day. And this is the way I'm going to present my — this is the way I want to present myself in front of the jury.

THE COURT: Well, let me just say this: I respect the fact that you've indicated that you wish to represent yourself. Under the checklist that I'm supposed to go through, you simply don't rise to the level where I can allow you to represent yourself. Okay?

THE DEFENDANT: Yes, sir.

THE COURT: So Mr. Sullenberger is going to represent you, and we are going to proceed to trial today.

Now I'll make sure, if you like, Mr. Pierce, that you have a notepad if you would like.

After the trial court denied appellant's request to appear *pro se*, appellant's counsel, Lance Sullenberger, continued to represent appellant throughout the trial.

■ Based upon the foregoing colloquy, we turn to the three requirements in *Mayo, supra*. A criminal defendant may invoke his right to defend himself *pro se* provided that (1) the

request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Mayo*, 336 Ark. at 280, 984 S.W.2d at 804. We note that these three requirements are in the conjunctive by the use of the word, "and." That is, all three factors must be satisfied in order to proceed *pro se*.

■ First, appellant contends that he clearly fell within the timeliness standard by invoking his waiver of counsel prior to trial in chambers. We agree. A constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial. *Collins v. State*, 338 Ark. 1, 991 S.W.2d 541 (1999). Here, appellant informed the trial court that he was unhappy with his representation, and requested to appear *pro se* in chambers before the trial commenced. Additionally, appellant indicated two times to the trial court that he wished to proceed without a lawyer, and he also affirmed that he believed that he was competent to represent himself. At that point, the trial court was on notice that appellant wished to appear *pro se*. Thus, we conclude that appellant's request to waive the right to counsel is unequivocal and timely asserted, thereby satisfying the first *Mayo* factor.

■ Second, we must determine whether there has been a knowing and intelligent waiver of the right to counsel under the second *Mayo* requirement. In *Faretta*, the Court opined that "technical legal knowledge, as such, [is] not relevant to an assessment of [a defendant's] knowing exercise of the right to defend himself." *Id*. at 836. Under *Faretta*, the only requirement for a knowing and intelligent waiver is that the accused be made fully aware of the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Id*. at 835 (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1943)). In *Faretta*, the Court reversed the trial court because the trial court focused exclusively on the accused's legal knowledge and education. *Id*. at 836; *see also Barnes v. State*, 258 Ark. 565, 572, 528 S.W.2d 370, 375 (1975) (stating that "[a]ll that is required is that the accused have full knowledge or adequate warning concerning his rights and a clear intent to relinquish them").

■ Similarly, in *Bledsoe, supra,* we held that, to establish a voluntary and intelligent waiver of the right to counsel, the trial court must inform the accused that he is entitled to an attorney as a matter of law, and question him to determine if can afford to hire a lawyer. In *Bledsoe,* the record did not reflect that the trial court advised Mr. Bledsoe of the dangers and disadvantages of proceeding without an attorney. *Id.* at 409, 989 S.W.2d at 513-514. Nor was Mr. Bledsoe informed about the rules and procedures of the court, the consequences of failing to comply with those rules, the inability to secure the admission or exclusion of evidence, the failure to preserve arguments on appeal, the constitutional right to an attorney, the ability to afford an attorney, or any other substantive risks of proceeding without counsel. *Id.* Based upon the trial court's failure to conduct a proper inquiry, we concluded that Mr. Bledsoe did not knowingly and intelligently waive his right to counsel. *Id.*

■ In the present case, the trial court committed reversible error under *Faretta* and *Bledsoe* by failing to conduct the proper inquiry. In its inquiry, the trial court focused primarily on appellant's prior experience with the legal system, the extent of his education, and the fact that appellant wished to appear in an orange jumpsuit. Appellant told the trial court that he had prior offenses and that he had obtained his GED. Ultimately, the trial court concluded that "[u]nder the checklist that I'm supposed to go through, you [appellant] simply don't rise to the level where I can allow you to represent yourself." Rather, the proper inquiry under *Faretta* and *Bledsoe* should have been whether appellant was made aware of the dangers of self-representation before relinquishing his right to counsel. Without this inquiry, appellant never had the opportunity to make a knowing and intelligent waiver of his right to counsel. While the trial court may have had good intentions to "protect [appellant] from his ignorance," as the trial court did in *Barnes,* the trial court in this case failed to apprise appellant of the dangers of self-representation, which are enunciated in *Bledsoe.* Failure to do so constitutes reversible error.

■ Finally, under the third requirement in *Mayo,* we must determine whether appellant engaged in conduct that would prevent the fair and orderly exposition of the issues. Here, there is no evidence in the record that indicates that appellant was disrup

tive or disorderly. While he had been charged with two prior failures to appear, he did appear on the morning of his trial, and was ready to proceed. For these reasons, we conclude that appellant met the third *Mayo* requirement.

▉ Appellant further argues that the trial court's failure to inform him of the dangers of self-representation should not be considered harmless error. Specifically, appellant contends that a showing of prejudice should not be required for reversal of *Faretta* violations, and that we should overturn our recent case, *Morgan v. State*, 359 Ark. 168, 195 S.W.3d 889 (2004). Because we provide appellant with the relief he requests, we refuse to delve into the merits of appellant's harmless-error argument.

▉ Based upon the foregoing conclusions, as well as our standard of review on a waiver of the right to counsel, we hold that the trial court erred in failing to conduct the proper inquiry. Accordingly, we reverse and remand for a new trial.

Reversed and remanded.