Cite as 2021 Ark. App. 185

# ARKANSAS COURT OF APPEALS
## DIVISIONS III & IV
### No. CR–20–341

| | |
|---|---|
| JAMAR CONIC<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** April 28, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION<br>[NO. 60CR-15-2679]<br><br>HONORABLE PATRICIA JAMES, JUDGE<br><br>DISMISSED WITH PREJUDICE IN PART; REVERSED AND REMANDED IN PART FOR RESENTENCING |

## BRANDON J. HARRISON, Chief Judge

This is a probation-revocation case with twists and turns. The main problem is that, in the end, the circuit court made Jamal Conic proceed pro se during a sentencing hearing on a felony offense, and it did so without having advised the accused of his right to counsel. On this record, that decision is a reversible error because the court violated Conic's right to be represented by counsel of his choice at a critical point in the legal process. The Supreme Court of the United States has held that once a defendant has established a violation of the Sixth Amendment, then he does not also have to show prejudice. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). An established violation of the Sixth Amendment right to be represented by counsel of one's choice requires that a related conviction be reversed because the violation is a "structural defect" and therefore not subject to a harmless-error analysis. *Id.* We must therefore reverse the court's decision to sentence Conic for a probation

violation and remand for a new sentencing hearing. Section I. below further details the reasons for our decision.

Next, the State has raised a jurisdictional issue apart from its defense of the circuit court's decision to sentence Conic without his having counsel present. Specifically, the State argues that Conic filed an untimely notice of appeal from the circuit court's 14 January 2020 order that denied Conic relief that he sought under Ark. Code Ann. § 16-90-111 (Repl. 2016).[1] Two orders were appealed in this case, and the January order is one of them. The other order, which was entered on 26 February 2020, is the sentencing order. Regarding the January order, Conic argues that the sentence he received after he pled guilty to his fourth DWI is an illegal one. The reason, he says, is that when he pled guilty to DWI #4, he had not yet been convicted of committing three prior DWIs, which is an obvious prerequisite to DWI #4. The State is correct that we lack jurisdiction. Section II. below further details our decision on this point.

---

[1]Arkansas Code Annotated § 16-90-111, which has been superseded in part by supreme court rule, provides:

> (a) Any circuit court, upon receipt of petition by the aggrieved party for relief and after the notice of the relief has been served on the prosecuting attorney, may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided in this section for the reduction of sentence.

> (b)(1) The circuit court may reduce a sentence within ninety (90) days after the sentence is imposed or within sixty (60) days after receipt by the circuit court of a mandate issued upon affirmance of the judgment or dismissal of the appeal.

> (2) The circuit court may also reduce a sentence upon revocation of probation as provided by law.

2

I. *Conic's Right to Counsel Was Violated*

A.

We begin with Conic's argument that he was deprived of the right to counsel of his choice while being subjected to a sentencing hearing on a felony charge. Initially, we note that Conic told the circuit court that he had retained two different private attorneys during the case, so he was not indigent. The *guilt phase* of Conic's probation-revocation hearing was held on 14 January 2020. At that time, the State produced evidence that Conic had violated the terms of his probation by committing the new crimes of public intoxication, disorderly conduct, and criminal mischief while on probation for DWI #4. Conic's lawyer at the time (Danny Williams) made no arguments in Conic's defense during this guilt phase of the hearing on the petition to revoke. Counsel instead said that he would "reserve" argument "for sentencing."

The *sentencing phase* commenced on 11 February 2020. At that time, Williams appeared with Conic for the scheduled sentencing hearing on the petition to revoke. With the court having previously adjudged Conic guilty of violating his probation as alleged in the State's petition to revoke, the sentencing hearing began with this colloquy.

| | |
|---|---|
| WILLIAMS: | Good morning. |
| CIRCUIT COURT: | Good morning, Mr. Williams, I understand that Mr. Conic's retained a new attorney? |
| WILLIAMS: | That is correct. |
| CIRCUIT COURT: | And— |
| WILLIAMS: | She called me last night, Angela Kendrick. |
| CIRCUIT COURT: | And she's not here today? |

3

| | |
|---|---|
| WILLIAMS: | She's not here today, I think she's in district court in Bryant. |
| CIRCUIT COURT: | Was she aware he had court today? |
| WILLIAMS: | I think she was committed when she was retained. |
| CIRCUIT COURT: | Committed to what, I'm sorry? |
| WILLIAMS: | I think she's in a trial in Bryant. |
| CIRCUIT COURT: | Oh, okay. Are you standing in for her today? |
| WILLIAMS: | If you don't mind, that's—I'm just for the purpose of a continuance; she called and asked me to. |
| PROSECUTOR: | I mean, I'm going to object to a continuance. |
| CIRCUIT COURT: | I mean, you're a kind person. I mean, because we've been—okay, well I got to have |
| WILLIAMS: | I'm me, I'm here, I'm here at the Court's disposal and, you know— |
| CIRCUIT COURT: | I know and that's what I'm saying, I called you in because I was like if somebody else went—if he went and hired a new attorney and he relieved you, I was going to tell you you're relieved. |
| WILLIAMS: | I'll take being relieved. |

The court basically reasoned:

> Yeah, you don't take a client and hope you're going to get a continuance. . . . and not communicate anything with the Court. I mean, I'm very concerned about that because the thing is—but I didn't want you sitting out here waiting an hour or two because he's going to sit here until he does a drug screen.

When Williams said, "That seems to be a different issue than sentencing," the court responded, "I didn't want you sitting out there all day if you're not the attorney of record."

4

To that statement Williams replied, "I am not and I'll be glad to go." The court then, on its own motion, discharged Williams from his obligation to represent Conic.

The prosecutor—being alert to the problem that a felony sentencing hearing was going to be conducted without defense counsel present—asked the circuit court to bring Conic into the courtroom, which the court did. Conic was then sworn as a witness. The court questioned him about the status of his representation by an attorney. Conic confirmed that he no longer wanted Williams as his attorney and that he had hired Kendrick as his new attorney. When asked where attorney Kendrick was, Conic said she was "in court in Benton or something. . . . She was supposed to enter an appearance or something." The court told Williams, "[Y]ou are relieved and you're free to go." Attorney Kendrick, according to the court, had not yet called to say she was stuck in Benton, had not yet filed an entry of appearance, nor had she asked for a continuance. Attorney Williams, who apparently had not yet left the courtroom, asked for a continuance on Kendrick's behalf, to which the prosecutor objected. The court then said:

> Right. And that's the problem. You know this, if an attorney is going to take on a case the night before a case goes to court, you better make sure you've got a continuance before you take it. Because the thing is you're not guaranteed a continuance. . . . [W]e're going to sit here for a bit I guess. And then if I don't see anybody by the time I'm ready to go home, then, Mr. Conic you'll go next door and wait until tomorrow maybe I can get you on the docket tomorrow. So I would get on the phone and start calling my attorney and I would start drinking some water.

Approximately one hour later, the sentencing hearing resumed on the record. The court stated, "Ms. Kendrick has [contacted] this Court and indicated that she was not going to be here today. Mr. Conic, you don't have an attorney. You have played yourself into no attorney." Conic replied, "Oh, I didn't play myself into anything. I apologize, but

5

Danny [Williams] is supposed to be . . . back[.]" Attorney Williams did not return and was not present when the State presented evidence to support its sentencing recommendation of three years.

After the close of the State's case, the prosecutor asked the court if he could question Conic about a matter "not necessarily relevant to this sentencing." The court said yes. During the State's questioning, Conic said that he had hired Kendrick two days before and that he had paid a retainer. When asked whether Kendrick knew that Conic had a sentencing hearing today, Conic said that he thought that the "way it was supposed to go" is that Williams would stand in for her today since she had another court date the same day. Kendrick reportedly told Conic that Williams was supposed to come in and request a continuance on her behalf so that she could review the record and his file. Conic said that he spoke to her on the telephone, and she told him that Williams was supposed to return to stand in for her. The court said that it was "befuddled at an attorney who would accept a retainer and tell someone that they were going to represent them in a case and not know whether or not they had secured a continuance," to which Conic replied, "I see—that's beyond me."

The court then told Conic that he may have an action against his attorney or might at least try to get his money back. Conic then asked the court to grant a continuance "based off of the grounds of my ignorance." The court denied the request and told Conic that "once this sentencing order is done, you can get them to appeal that and you all can take up every one of these issues." Conic asked for an appeal bond, to which the prosecutor objected. There was some discussion about Conic's criminal history and that he had not

6

appeared for drug screens since the State had filed its petition to revoke. The court then said:

> And this is a big mess really of your making. But you don't have an attorney here today. And so now I've got to figure out whether I just lock you up. Because if I lock you up today, I'm betting I'm going to have an attorney file an appeal and bond pretty darn quick. I let you out and this may drag on again. And—and the thing is that—that's problematic for me because I'm trying to move forward with this and it seems like a little bit of game playing. And—again, a mess of your own making. You didn't seem to have any problems with Mr. Williams or anything of that nature. In fact, now that Ms. Kendrick said she couldn't come, you were willing for him to show up. So I don't understand what the problem is with that other than my guess is like many people you thought if I brought a new attorney in here today, I'm guaranteed with a continuance. And that just didn't happen. . . . [Y]ou've been in this long enough and you've hired and fired plenty of attorneys throughout this process in district court and everything else to come in here and plead ignorance about it today.
>
> . . . .
>
> [Bailiff], if you'll take Mr. Conic into custody today, he's sentenced to three years ACC. I will anticipate that I'm going to get something from some attorney in the next few days asking probably for who knows all what. But that way at least somebody will show up and then I'll get an appeal and then I can set an appeal bond when you have an attorney here.

## B.

The Sixth Amendment to the United States Constitution guarantees Conic the right to retain counsel of his choice, which is an aspect of his "right to spend his own money to obtain the advice and assistance of . . . counsel." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989) (internal quotation and citation omitted). The purpose of the right is to "guarantee an effective advocate for each criminal defendant, rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The Sixth Amendment gives a defendant

7

who faces incarceration the right to counsel at all critical stages of the criminal process. *United States v. Wade*, 388 U.S. 218 (1967).

Regarding the standard of appellate review, when a defendant desires new counsel but needs a continuance to carry out the change, the Supreme Court of the United States has explained that appellate courts review a trial court's denial of a continuance to determine whether it was "so arbitrary as to violate due process." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Part of the calculus includes the legal fact that a persistent and unreasonable demand for the dismissal of counsel so that a defendant may retain new counsel can function as a valid waiver of counsel. *See, e.g., United States v. Pittman*, 816 F.3d 419 (6th Cir. 2016). To determine whether such a waiver has occurred, we must ask whether the circuit court's finding that a defendant's waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence. *Parker v. State*, 93 Ark. App. 472, 220 S.W.3d 238 (2005).

Circuit courts bear the heavy responsibility to determine whether an accused has knowingly and intelligently waived his right to counsel. *Pierce v. State*, 362 Ark. 491, 209 S.W.3d 364 (2005). The State, not the defendant, must show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel. *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996). That a waiver was voluntary and knowing and intelligent turns on whether the accused was made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo counsel. *Parker*, 93 Ark. App. 472, 220 S.W.3d 238.

8

What has just been described is the usual way a voluntary, knowing, and intelligent waiver of this constitutional right is made, which usually happens after a circuit court advises the defendant of the dangers and disadvantages of self-representation and determines that the defendant "knows what he is doing and his choice is made with eyes open." *Pierce*, 362 Ark. at 498, 209 S.W.3d at 368 (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942)). But the right to counsel is not a license to abuse the dignity of the court or to frustrate orderly proceedings. *See Terry v. State*, 303 Ark. 270, 272, 796 S.W.2d 332, 334 (1990). Arkansas courts have acknowledged that, like other constitutional rights, the right to counsel can be implicitly waived or forfeited if a defendant manipulates, abuses, or uses the right to delay or disrupt a trial. *Id.* (citing *Illinois v. Allen*, 397 U.S. 337 (1970)); *see also Wheat v. United States*, 486 U.S. at 159 (A defendant's right to counsel of choice can be "circumscribed" by appropriate governmental interests.).

Additionally, a court's denial of a motion to substitute counsel or the denial of a motion to continue the case can, in some fact patterns, infringe upon a defendant's constitutional right to retain counsel of his choice. *See Beyer v. State*, 331 Ark. 197, 962 S.W.2d 751 (1998). There is no absolute test for deciding when the denial of a continuance is so arbitrary that it violates a criminal defendant's federal constitutional right. *Ungar v. Sarafite*, 376 U.S. 575 (1964). What follows are some factors that, over time, the Arkansas Supreme Court has considered important when deciding whether a criminal defendant's federal constitutional right to counsel was violated:

- Whether the continuance request came at a point sufficiently in advance of trial to permit the court to readily adjust its calendar. *Thorne v. State*, 269 Ark. 556, 601 S.W.2d 886 (1980).

- The length of the continuance requested. *Leggins v. State*, 271 Ark. 616, 609 S.W.2d 76 (1980).

- Whether the court had granted previous continuances at the defendant's request. *See Bryant v. State*, 304 Ark. 514, 803 S.W.2d 546 (1991) (court had previously granted nine continuances).

- Whether the continuance would seriously inconvenience the witnesses. *Morris v. Slappy*, 461 U.S. 1 (1983).

- Whether the reason for the discharge of existing counsel was solely for the purpose of obtaining a continuance. *Arroyo v. State*, 2013 Ark. 244, 428 S.W.3d 464.

- Whether the continuance was made promptly after the defendant first became aware of the grounds for discharging his counsel. *Tyler v. State*, 265 Ark. 822, 828–29, 581 S.W.2d 328, 331 (1979) (An accused may not play a "cat and mouse game with the court" in choosing a new lawyer on the eve of a trial.).

- Whether the defendant's own conduct placed him in a situation that necessitated a continuance to obtain new counsel. *Thorne*, 269 Ark. at 561, 601 S.W.2d at 889 (Defendant had relied on private counsel's representation that the counsel would be substituted for public defender so "defendant did not [himself] contribute to the circumstances which gave rise to the request.").

- Whether defendant had some legitimate cause for dissatisfaction with counsel and a reason for the change. *Bryant, supra* (previous attorney had conflict of interest).

- Whether there was a "rational basis" for believing that the defendant was seeking to change counsel "primarily for the purpose of delay." *Tyler*, 265 Ark. at 827–28, 581 S.W.2d at 330–31. *But see Beyer v. State*, 331 Ark. 197, 962 S.W.2d 751 (1998) (reversing when there was a lack of convincing evidence to support the conclusion that the defendant's motion for a continuance was an attempt to postpone his trial date and holding that the circuit court had abused its discretion by requiring the defendant to be tried without counsel).

- Whether the continuance request was consistent with the fair, efficient, and effective administration of justice. *Arroyo*, 2013 Ark. 244, 428 S.W.3d 464.

- Whether the current counsel was prepared to go to trial. *Leggins*, *supra* (no abuse of discretion in denying change in counsel when current counsel was prepared and willing to represent defendant at trial).

- Whether denial of the motion was likely to result in "identifiable prejudice to the defendant's case of a material or substantial nature." *Thorne*, 269 Ark. at 561, 601 S.W.2d at 889.

C.

Here, the circuit court discharged current counsel the day of sentencing on a felony charge, denied Conic's multiple requests for a continuance to resolve the counsel snafu, failed to apply the required constitutional analysis, and did not find that Conic was made aware of the danger of self-representation or that he knowingly and intelligently waived his right to counsel. The court's decision that Conic could represent himself during the felony sentencing hearing was clearly against the preponderance of the evidence. And the court's denial of a continuance, given all the circumstances, was an abuse of discretion that amounted to the denial of due process of law.

In *Mempa v. Rhay*, 389 U.S. 128 (1967), the Supreme Court of the United States heard a consolidated set of cases and decided that sentencing was a critical stage of the trial, even one related to the revocation of probation based on an underlying felony offense. Therefore, the defendants were entitled to counsel. During the revocation hearing of defendant William Earl Walkling in *Mempa*, the defendant told the court that he had retained an attorney who was supposed to be present. The court waited fifteen minutes but then conducted the hearing without defense counsel present. The defendant was not offered

11

appointed counsel, which would not have been appointed for him even if he "had . . . requested it." *Id*. at 132. At the hearing, a probation officer presented hearsay testimony to the effect that the defendant (Walkling) had committed forgery and larceny while on probation. The probation was revoked, and Walkling was sentenced to fifteen years' imprisonment. He filed a habeas corpus petition and ended up in the Supreme Court of the United States.

The Supreme Court reversed and remanded. The Court reasoned that it was apparent that counsel was required to obtain the facts, introduce evidence of mitigating circumstances, and generally assist the defendant in presenting his case as to what sentence he should receive. The Court also noted that certain legal rights might be lost if not exercised at that stage. It also observed that a plea of guilty might well be improperly obtained and that, in these cases, the eventual imposition of sentence on the defendant's prior guilty pleas was based on the alleged commission of criminal offenses for which the defendant was never tried.

Like the defendants in *Mempa*, Conic needed a lawyer to help introduce mitigating factors or circumstances and to present his case to the circuit court when facing sentencing. As in *Mempa*, the sentencing phase in this case was vital. A lawyer's ability to advocate for a sentence of lesser length, to provide advice about the sentence itself, and to ensure appeal rights are known are important to Conic's personal liberty. Simply put, Conic's sentencing hearing was a critical stage of the criminal-law process wherein his substantial rights were affected. *See Furr v. State*, 285 Ark. 45, 685 S.W.2d 149 (1985). The circuit court in this case waited an hour, not fifteen minutes; but it then moved the felony case forward and

12

sentenced Conic to serve three years in the Arkansas Department of Community Correction after the court had discharged the same lawyer that represented Conic during the guilt phase just one month prior to sentencing.

Conic has a constitutional right to have his lawyer present during a sentencing hearing on a felony offense. But Conic's right to privately retained counsel of his choice must be balanced against the public's interest in the prompt and efficient administration of justice. In this case, the equities fall in Conic's favor. There is no indication that the circuit court weighed Conic's constitutional right against a countervailing governmental interest. In fact, the court never acknowledged that Conic had a constitutional right at all. Nor did it identify a public interest at stake. The court did not point to any scheduling conflict or problem on its calendar or the prosecutor's calendar or explain why this probation sentencing could not sustain a minimal delay. Expediency alone is not a basis to deny a continuance in this case. But even if it was, attorney Williams, who had tried the case during the guilt phase, was present and available at the sentencing phase to represent Conic. Williams was presumably prepared because he had informed the court a month before that he was holding his fire for the sentencing hearing. So the court could have held the hearing on February 11; and it could have done so with Williams at the helm. Instead, it relieved Williams of any obligation before Conic had even stepped into the courtroom. Instead of providing Conic with his constitutional right to counsel, the circuit court instead suggested that Conic's relief was to sue his attorney or to "at least try to get his money back."

Moreover, Conic had neither asked for nor received a prior continuance related to his sentencing. There was no information available about the length of the trial delay that

would be necessary for attorney Kendrick to be prepared. No inquiry was made by the court on whether a delay would inconvenience the State's sole witness or the parties. The record is silent on why Conic wanted to fire Williams and hire Kendrick. Conic was never asked if he had a legitimate reason for retaining a new attorney. The court seemingly resolved that Conic had a dilatory purpose in switching lawyers, but the court did not make findings as to Conic's motives when it rejected the two continuance requests that Williams made on Conic's behalf before the hearing started. Before Williams left, the court gave no reason for denying his continuance requests other than a new attorney should not take a new case unless he or she can secure a continuance. In this case, that statement did not concern the court's calendar availability, the orderly administration of justice, or Conic's constitutional right. In fact, it was only after the hearing had effectively ended that Conic's criminal record became an issue. At that point, the court seemed to impart bad motives to Conic regarding the counsel issue on the basis of his past criminal history.

Given the circumstances, the circuit court's denial of Conic's request for substitution of his counsel and for a continuance was an abuse of discretion. The record before us does not show that Conic's choice of retained counsel was outweighed by considerations that relate to the fair and efficient administration of justice. The presumption in favor of a defendant's Sixth Amendment right to counsel also resolves this case against the State and in favor of Conic. The circuit court's implied conclusion that Conic waived his constitutional right to have his lawyer present during the sentencing hearing was clearly against the preponderance of the evidence.

14

II. *Two Jurisdictional Problems (A Late Notice of Appeal and an Untimely Rule 37 Petition)*

We have been discussing a constitutional issue related to the February 2020 sentencing order. But another one of Conic's arguments on appeal relates to the January 2020 order that denied his motion to correct an illegal sentence under Ark. Code Ann. § 16-90-111. The State asks us to dismiss the appeal because Conic failed to file a timely notice of appeal from the court's denial of his motion. We agree with the State that we lack jurisdiction to review the January order; therefore, the appeal is dismissed in part. To be clear, the part of the appeal that is dismissed for lack of jurisdiction is Conic's assertion that the circuit court erred by denying his motion to correct an illegal sentence under section 16-90-111.

A.

The alleged illegal sentence at issue in this appeal was entered on 17 March 2016.[2] Four years later, on 3 December 2020, Conic made a motion to the circuit court seeking relief under Ark. Code Ann. § 16-90-111 and argued that his 17 March 2016 sentence was illegal because his DWI #3 was dismissed for speedy-trial reasons. Consequently, he did not actually have three prior offenses when he pleaded guilty to the fourth offense. The court denied Conic relief in the written January 14 order.

---

[2]Conic received three years' probation on 17 March 2016 after pleading guilty to a fourth DWI. Although that sentence is not authorized by any statute, no party has raised the issue, so we will say no more about it. *See* Ark. Code Ann. § 5-65-111(d)(1)(A)–(B) (Repl. 2013); Ark. Code Ann. § 5-4-301(a)(1)(D) (Repl. 2013); Ark. Code Ann. § 5-4-104(e)(1)(A)(iv) (Repl. 2013).

We lack jurisdiction to decide this point in Conic's principal brief because he did not file a notice of appeal from the 14 January 2020 order within thirty days of its entry. *See* Ark. R. App. P.–Crim. 2(a)(4) (2020). In other words, Conic filed an untimely notice of appeal from the January 2020 order that denied him postconviction relief. There is, however, a timely notice of appeal from the sentencing order entered on 26 February 2020, and that is the order that revoked Conic's probation and sentenced him to three years' imprisonment.[3] We have, of course, already decided the point he raised with respect to the second order.

B.

There is another timing problem related to the January 2020 order and Conic's argument that he was sentenced illegally on a DWI #4 because he had not been found guilty of committing three prior DWIs. The second timing (and jurisdictional) problem is that Conic's "illegal sentence" argument had to be made within ninety days of the 2016 judgment; but it came some four years after instead. When a defendant files a motion under Arkansas Code Annotated section 16-90-111, unless a defendant is contending that a judgment is illegal on its face, the defendant is obligated to raise all claims for postconviction relief in a timely petition under Rule 37.1 because Rule 37.1 superseded the statute in part.

---

[3]The sentencing order has a box checked on it that reflects Conic pleaded guilty in the probation-revocation case. But there is no guilty plea in the record; and the transcript we have does not show that Conic pleaded guilty to the allegation in the petition to revoke at issue in this appeal. So the "checked box" seems to be a mistake on the sentencing order that needs correction on remand. Simply put, this is not an appeal from a guilty plea but an appeal from a conviction, which Conic has the right to bring pursuant to Ark. R. App. P.–Crim. 1(a) (2020). The two events are not one and the same.

*Chandler v. State*, 2021 Ark. App. 103, 618 S.W.3d 454 (citing Arkansas Supreme Court caselaw). Because Conic's motion to set aside his guilty plea under Ark. Code Ann. § 16-90-111 was not filed within ninety days of the challenged judgment's entry, the circuit court lacked the authority to convene a hearing or decide whether Conic was entitled to relief from his guilty plea. *See Jackson v. State*, 2018 Ark. 209, 549 S.W.3d 346 (stating that the time limits in section 16-90-111(b)(1) were superseded by Ark. R. Crim. P. 37.2(c)). Because the circuit court lacked the authority to decide the issue, we do too. *Reed v. State*, 317 Ark. 286, 288, 878 S.W.2d 376, 377 (1994) (The time limitations imposed in Rule 37 are "jurisdictional" in nature.).

### III. *This Appeal's Disposition*

Any claims or issues arising from the circuit court's 14 January 2020 order that denied Conic postconviction relief are dismissed with prejudice. As to the circuit court's 26 February 2020 sentencing order, it is hereby reversed and vacated for the reasons stated in this opinion. The case is remanded to the circuit court for resentencing.

Dismissed with prejudice in part; reversed and remanded in part for resentencing.

VIRDEN, WHITEAKER, and HIXSON, JJ., agree.

GLADWIN and BROWN, JJ., dissent.

**WAYMOND M. BROWN, Judge, dissenting**. The majority is of the opinion that the trial court abused its discretion by infringing on Conic's Sixth Amendment and Due Process rights when he was not informed of his right to counsel and forced to proceed in his sentencing trial pro se. However, my observation of the case is a bit different, and I believe that the court granted Conic's initial request and did not abuse its discretion with

Conic's additional request for a continuance because it had a reasonable and rational basis for its denial when it believed that Conic was attempting to evade sentencing with his tactics regarding counsel.

It is important to note that Conic requested continuances at two different times: one during the motion-to-be-relieved hearing and another at the end of his sentencing hearing. The record shows that Conic's initial request for a continuance was granted. Here, as the record demonstrates, the circuit court granted a temporary continuance of the hearing to allow Conic's newly hired attorney, Kendrick, time to appear in court later that day.

| THE COURT: | Okay. Well, Mr. Conic, here is the rub. You hired a new attorney and she doesn't show up at this court, then I have a problem. She hasn't contacted my Court. She hasn't called my Court to say Judge I'm in Benton, I'm stuck. I was supposed to be in court tomorrow. She didn't ask this Court for continuance. She hasn't done any of those things. |
| --- | --- |
| MR. CONIC: | Is it not entered or something? She was supposed to enter an appearance or something. |
| THE COURT: | No, sir, that -- we pulled up, that hasn't been done. Will you go check eFlex. But I guess my first question today is, as for Mr. Williams, he is not going to represent you, correct? |
| MR. CONIC: | Correct. |
| THE COURT: | All right. Mr. Williams, you are relieved and you're free to go. Mr. Conic, I need you to step back out in the hall and keep drinking water. |
| MR. CONIC: | Okay, no problem. |
| MR. WILLIAMS: | Your Honor, I need to say one thing. |
| THE COURT: | And I would I would ask you, too, you probably need to get on your phone and start calling your attorney. Yes, sir? |

MR. WILLIAMS:        I just wanted to say one thing for the record that I did talk to Ms. Kendrick last night. She asked me to ask the Court for a continuance. I don't think she's entered a written appearance, but she did –

THE COURT:        Well

MR. WILLIAMS:        tell me to ask you that

THE COURT:        But, Mr. Williams

MR. WILLIAMS:        and I've done it.

MR. MCCARROLL:    And, Judge, I would object to that continuance.

THE COURT:        Right. And that's the problem. You know this, if an attorney is going to take on a case the night before a case goes to court, you better make sure you've got a continuance before you take it. Because the thing is you're not guaranteed a continuance just by saying, "oh, hey, I'm new. I need a continuance." This has been out here for a while, but as for - thank you for being candid –

MR. WILLIAMS:        Thank you, Your Honor.

THE COURT:        -- but as for today you're -- you're relieved, Mr. Conic's hired someone else. We're going to -- we're going to sit here for a bit I guess. And then if I don't see anybody by the time I'm ready to go home, then, Mr. Conic, you'll go next door and wait until tomorrow and maybe I can get you on the docket tomorrow. So I would get on the phone and start calling my attorney and I would start drinking some water.

During the hearing in which the court granted the temporary continuance, Kendrick, contacted both the court and Conic to inform them that she would not be in attendance for the sentencing hearing. Conic proceeded to rehire Williams as his counsel of record. However, being that the court had already relieved Williams from the case, Williams

was no longer present in the court, and the court believed that Conic was using a tactic to evade his sentencing hearing, the court moved forward with Conic's sentencing hearing.

THE COURT: All right. Thank you, take a seat. This is 60CR-15-2679, Mr. Conic was set for sentencing today. He had relieved his attorney, Mr. Williams, indicating he had hired another attorney, Ms. Kendrick. Ms. Kendrick has made contact with this Court and indicated she was not going to be here today. Mr. Conic, you don't have an attorney. You have played yourself into no attorney.

MR. CONIC: Oh, I didn't play myself into anything. I apologize, but Danny is supposed to be I guess the clerk talked to him and he's supposed to be back –

THE COURT: Okay. Mr. Conic, on the record you relieved Mr. Williams.

MR. CONIC: Right.

THE COURT: Mr. Williams is no longer the attorney of record. You indicated you hired another attorney.

MR. CONIC: Right.

THE COURT: Where's your attorney?

MR. CONIC: Well, she actually was in court; so I just picked Mr. Williams back up so he's supposed to be here at 1:00 o'clock

THE COURT: Okay. Mr. Conic

MR. CONIC: -- and he talked to your clerk –

THE COURT: it is 1:12, Mr. Williams is not here. I have been here waiting for you and your attorney situation since you came in and now you don't have an attorney. Are you ready to proceed on your sentencing hearing pro se.

MR. CONIC: Well, I guess that's my only choice.

THE COURT: Pardon me?

20

MR. CONIC: I said I'm assuming that's my only choice. I mean, I have an attorney, so

THE COURT: Okay. You don't have an attorney here. You don't have an attorney of record. No one has filed anything. Mr. Williams was relieved under your direction, he was relieved, so. All right. Mr. McCarroll, call your first witness.

. . . .

MR. McCARROLL: -- proceeding other than his representation or the purported representation of him by Ms. Kendrick I believe. I would I'm wondering if if when Ms. Kendrick accepted this case to represent Mr. Conic if she was aware that the sentencing hearing was scheduled for today if the Defendant communicated that to her?

THE COURT: Mr. Conic, did you -- did you hire Ms. Kendrick?

MR. CONIC: Yes, ma'am.

THE COURT: Okay. And when did you hire her?

MR. CONIC: Yesterday -- two days ago.

THE COURT: Okay. And did you retain her at that point in time like paid her a retainer?

MR. CONIC: Yes, ma'am.

THE COURT: Okay. And was she aware you had this hearing today at 1:00 o'clock?

MR. CONIC: From my understanding that she was going to add whatever it is - go to the system and request representation or something like that. And the way it was supposed to go was Danny was supposed to stand in for her because she had a pre- - you know, other court today and so he was supposed to stand in for her

THE COURT: Did she relate that to you or is that what you –

MR. CONIC: That's my understanding. That's relayed from her was that he was supposed to come in, request a maybe the

21

continuance on her behalf so that she could review the record or whatever or the file and so

THE COURT: Have you had any contact with her this morning?

MR. CONIC: Ms. Kendrick?

THE COURT: Yes.

MR. CONIC: Well, I just talked to her on – on the way back up and she said that she contacted you guys and that she spoke with Danny who was supposed to be back here at 1:00 o'clock to fill in for her or stand in for her? And that your clerk or someone knows that or something like that. So I it's beyond me.

THE COURT: Okay. Well, you know, Mr. Mr. Conic, I can't do anything about attorneys not doing what they're supposed to do. You know, Mr. Williams came in and he asked to be relieved. I asked you if he was no longer your attorney, you said he was not that you had hired a different attorney. I'm befuddled at an attorney who would accept a retainer and tell someone that they were going to represent them in a case and not know whether or not they had secured a continuance.

. . . .

[I]t's beyond you. You may have an action against that attorney. You may be able to file a complaint against that attorney or, you know, at least try to get your money back because the thing is this is -- but the problem is this Court wasn't inclined to grant a continuance and the thing is –

MR. CONIC: Well, I guess, see, I don't know the law. That's not my forte, that's why I pay representations. So I -- they -- I thought that was all situated, you know, I because I would have kept my record [sic], I already paid him in full. So I would have just kept him and had him to handle the sentencing and then just hire her for the appeal or whatever else, you know. So I didn't know that. And so that's just how that rolled out, you know. I didn't know not to relieve him and I sort kind of thought that he should have said something. I don't know, but whatever.

22

THE COURT:        But he was no long[er] your attorney at that point. You had hired someone else.

MR. CONIC:        Well, I get that. I understand. I do get it, but

THE COURT:        So he really didn't have an obligation after that point because a new attorney had been hired?

MR. CONIC:        I got it. No I get it, I understand that. I definitely get it, but that's something that

THE COURT:        Okay.

MR. CONIC:        I figured was worked out and I was unaware of.

THE COURT:        Well, do you have a request or statement to make about the sentencing today?

MR. CONIC:        I just ask that, you know, we are allow – well, I'm allowed the continuance based off of the grounds of my ignorance, I guess.

THE COURT:        Okay. So, Mr. Conic, now you're requesting a continuance?

MR. CONIC:        Yes, ma'am.

THE COURT:        Because you understand we just had a hearing?

MR. CONIC:        Oh, see I don't understand. I don't know the law, so.

Under the Sixth Amendment, a defendant has the right to be represented by a qualified attorney of his or her choice.[4] This right is not absolute;[5] however, the exercise of

---

[4]*United States v. Jones*, 662 F.3d 1018, 1024 (8th Cir. 2011); *United States v. Bradshaw*, 955 F.3d 699, 703 (8th Cir. 2020), *reh'g denied* (June 5, 2020).

[5]*Jones*, 662 F.3d 1018.

this right to choose counsel "must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice."[6]

In deciding whether to grant a continuance to obtain new counsel, we have said that once competent counsel has been obtained, any request for a change in counsel must be balanced against the public's interest in the prompt dispensation of justice.[7] The right to counsel may not be manipulated or subverted to obstruct the orderly procedures of the court or to interfere with the fair, efficient, and effective administration of justice, particularly when a change of counsel is made on the eve of trial, primarily for the purpose of delay and without making any effort to obtain substitute counsel.[8] In each situation, the court must look at the particular circumstances of the case at bar, and the issue must be decided on a case-by-case basis.[9]

When determining whether to grant such continuance, factors to be considered by the circuit court include whether there was adequate opportunity for the defendant to employ counsel; whether other continuances have been requested and granted; the length of the requested delay; whether the requested delay is for legitimate reasons; whether the motion for a continuance was timely filed; whether the defendant contributed to the circumstances giving rise to the request for a continuance; whether the reason for the

---

[6]*Id.*

[7]*Haskins v. State*, 2013 Ark. App. 613.

[8]*Id.*

[9]*Id.*

discharge of existing counsel was solely to obtain a continuance; and whether the request was consistent with the fair, efficient, and effective administration of justice.[10]

As displayed from the record, the circuit court was cognizant of Conic's "eve-of-trial" attempt to change counsel the night before his revocation sentencing hearing and perceived the move as a tactic to evade sentencing, stating that he had "played [himself] out of an attorney," and noting that the sentencing hearing had been scheduled for a date several weeks after the revocation hearing, at the request of his then counsel Williams, so that he could effectively prepare and that Conic had adequate counsel, who was present, until Conic requested that Williams be relieved as counsel of record with no further reasoning supporting his request other than he had hired a new attorney, Kendrick, a day or two before and simply wished to relieve Williams as counsel.

Nevertheless, the circuit court granted a temporary continuance of the hearing to allow Kendrick, Conic's new counsel, time to appear in court later that day, despite the immediacy of the hearing. As the record indicates, the State was present and ready to move forward with the trial, and so was its witness. Also, there was no entry of appearance provided to the court nor was there a motion for a continuance filed with the court by Kendrick of the need for more time. Thus, given that the circuit court did grant a brief continuance to allow Conic's counsel an opportunity to appear or, at the very least, offer a valid reason for a continuance, Conic cannot now contend that he was denied a continuance

---

[10]*Id.*

in violation of his right to counsel.[11] "[T]he right to counsel is a shield, not a sword[.]"[12] A defendant may not use the right for the purpose of delaying trial.[13] A defendant's conduct can prevent the fair and orderly exposition of the issues and amount to a forfeiture of his right to counsel.[14]

In regard to Conic's following request, it was only after the sentencing-hearing testimony had concluded that Conic requested an additional continuance; even then, he clarified that his request was only to have his attorney challenge that he had committed DWI, fourth offense, not for the revocation proceeding. As the circuit court noted, that issue had already been heard, and decided, by the court with Conic's previous counsel present. Also, the record is clear of any prejudice toward Conic due to such denial.

Thus, observing the fact of Conic's tactic to evade sentencing with his last-minute change in counsel and given that the circuit court did grant a temporary continuance to allow Conic's new counsel the opportunity to arrive and be present for the trial, it is my opinion that the lower court was well within its discretion to move forward to Conic's sentencing hearing. Consequently, I would affirm the circuit court in this case.

Thus, for the reasons stated herein, I respectfully dissent.

GLADWIN, J., joins.

---

[11]*McClain v. State*, 361 Ark. 133, 138, 205 S.W.3d 123, 126 (2005) (a party who has received the relief requested has no basis for appeal).

[12]*Tyler v. State*, 265 Ark. 822, 827, 581 S.W.2d 328, 330 (1979); (citing *United States v. White*, 529 F.2d 1390 (8th Cir. 1976)).

[13]*Id.*

[14]*Irvin v. State*, 62 Ark. App. 143, 972 S.W.2d 948 (1998).

*Law Office of Angela D. Kendrick*, by: *Angela D. Kendrick*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Senior Ass't Att'y Gen., for appellee.